ELIHU N. POWELL *et al.*, Administrators of H. P. JOHNSON, deceased, plaintiffs in error, *v.* CHARLES KETTELLE, School Commissioner of Peoria County, defendant in error.

*Error to Peoria.*

By the principles of the Common Law, where one joint obligor dies, all right of action at law, as against his estate, or his administrators, is gone; it was only in Equity that relief and satisfaction could be had out of his estate. Even then, relief would be refused, unless the intestate had participated in the benefits of the consideration, or could be treated as a several obligor.

The law regulating the sale of school land, and directing the kind of contract to be entered into, with the time and terms of credit, &c., is the public law of the land, and the security must take notice, at his peril, of the liability imposed by the law upon him.

The statute prescribing the form of the notes to be taken on the sale of school land, has made them joint and several obligations, it specially declaring that the surety shall, in all respects, be liable as principal.

Where joint notes were taken on the sale of school land, it was *held* that Equity would enforce the liability imposed by the statute, and would treat the security as a several obligor and as principal.

A decree giving costs and awarding execution against an administrator is erroneous.

BILL IN EQUITY in the Peoria Circuit Court, filed by the defendant in error against the plaintiffs in error. The facts and proceedings in the case are briefly stated in the Opinion of the Court.

*E. N. Powell* and *W. F. Bryan, pro sese,* cited *Rowston* v. *Parr,* 3 Russ. 539, 424; *Sumner* v. *Powell,* 2 Merivale,

Powell *et al.* adm'rs, *v.* Kettelle, School Com'r.

30; *Harrison,* Ex'r, v. *Field,* 2 Wash. Vir. R. 136; *Chandler,* Ex'r, v. *Hill,* Ex'r, 2 Hen. & Munf. 124; 1 Story's Eq. Jur. 176–8; for the purpose of showing that the estate of a deceased joint maker of a note, who is only a security, &c., cannot be made liable in Equity.

Joint bonds construed joint and several only by the intention of the parties. *Burn* v. *Burn,* 3 Vesey, 573; *Thomas* v. *Frazer,* Ib. 399; *Underhill* v. *Horwood,* 10 do. 227; *Grey* v. *Chiswell,* 9 do. 124; Newl. on Cont. 349.

As a general rule, an executor or administrator shall not be made personally liable for costs, and it is improper to award execution for costs; *a fortiori* for the debt. *Greenwood* v. *Spiller,* 2 Scam. 504; *Burnap* v. *Dennis,* 3 do. 483; *Swiggart* v. *Harber,* 4 do. 372.

*H. Brown,* for the defendant in error.

The doctrine of the cases cited in relation to joint, and joint and several liabilities, as regards their nicety, &c., is done away by our statute. Gale's Stat. 515, § 4.

The bill in this case is predicated on good authority. *Marshall* v. *De Groot,* 1 Caines' Cases, 132. The creditor may proceed against the *effects* of the deceased. Story's Eq. Pl. 176.

As to the correction of mistakes, see the case in 1 Johns. Ch. R. 607, where a mistake was corrected against a security. The authorities on this point are reviewed in the case of *Gillespie* v. *Moon,* 2 Johns. Ch. R. 580; see also the case of *Bishop* v. *Church,* 2 Vesey Sen. 106–7.

As to the decree against the administrators for costs, see Gale's Stat. 711, § 97, in regard to their liability.

*C. Ballance,* on the same side, cited *Marshall* v. *De Groot,* 1 Caines' Cases, 132, and *Thomas* v. *Frazer,* 3 Vesey, 399, and the cases cited in the note to the same.

An obligation is "a legal tie which binds us to another, either to give him something, or to do or abstain from doing some act." 2 Pothier on Obl. 1. All joint obligations and covenants are to be taken and held to be joint and several

obligations and covenants under our statute. Gales' Stat. 515, § 4; see also, Bouvier's Law Dic., title " Obligations."

The tenth section of the Act of 1829 declares, that sureties shall "be considered in all respects as principals." Dig. of School Laws, 31, published in 1835. The note in this case was executed May 3, 1836.

A damage to the promisee constitutes as good a consideration as benefit to the promisor. *Townsley* v. *Sumrall*, 2 Peters, 182.

To constitute a good consideration, it is not absolutely necessary that a benefit should accrue to the person making the promise. It is sufficient that something valuable flows from the person to whom it is made, that the promise is the inducement to the transaction, *Violett* v. *Patton*, 2 Peters' Cond. R. 216; *McDonald* v. *Magruder*, 3 Peters, 475.

*E. N. Powell*, in reply:

It is a sufficient answer to the point raised by the counsel for the defendants to say, that *"covenants and obligations"* have each a technical meaning, well known to the law. That a promissory note is neither a covenant or obligation, according to the well known and defined principles of law. The moment it assumes the form of either of the latter, it ceases to be a promissory note, requiring a different mode of action to recover on it. Besides a covenant, or an obligation, must be under seal, although a note under seal would not make it a covenant, or obligation, in a strict technical sense.

Again, had the legislature intended to include promissory notes in the statute referred to, it would have been easy to have done so by the use of appropriate words. That having made use of *well known terms of art*, which have acquired a definite meaning in law, they must be intended as having used them in that sense. 1. Black. Com. 59; 7 Cowen, 202; 2 M. & Sel. 230; 1 Term R. 730. And when the legislature makes use of certain technical words, which are well known and understood, the Court is bound to suppose that the legislature used them in that sense. But it is made more certain that the legislature used these terms in the usual sense,

from the fact, that the Act referred to by the counsel was passed in 1821; and by turning to the ninth section of the Act relative to promissory notes, it will be found that it repeals an Act making promissory notes, bonds, bills, and *writings obligatory* negotiable, approved February 6th, 1819. This repealed Act was then in existence, at the time of the passage of the law above referred to. The use of the terms *"writings obligatory,"* in contradistinction to promissory notes, shows conclusively, that the legislature used them in a technical sense; and the conclusion is irresistible, that the terms used in the Act referred to were used in the same sense. By looking at the fifth and seventh sections of the Act relative to promissory notes, it will be seen that the distinction between bonds and notes is carefully preserved, by the use of the words *obligee* and *payee*, whenever they are respectively proper. Then there can be no question that the legislature, by declaring that all joint covenants and obligations shall be held and taken as joint and several, intended only to apply to *"covenants and obligations"* in their technical sense, and did not intend to apply to promissory notes.

The Opinion of the Court was delivered by

SCATES, J. In 1836, one Thomas J. Hurd purchased a certain lot of the school land at two hundred and fifty dollars, for which he executed his joint note with H. P. Johnson security, payable in one, two, and three years, &c., with a mortgage upon the premises. The note, not being paid, the mortgage was foreclosed, and the land sold to the trustees of the same township for sixty six dollars, sixty six and two thirds cents. Johnson died intestate. Hurd was sued upon the note, and prosecuted to insolvency. This bill was filed against Powell and Bryan, the administrators of Johnson, to obtain payment out of his estate. They answer, admitting that their intestate executed the note jointly with Hurd as his security merely; that Hurd is insolvent; and state that it is probable Johnson's estate will also be insolvent, and that injustice will be done the creditors of Johnson, by allowing this claim.

The Court made a decree that this debt be paid in the due course of administration, and that it be put in the fourth class of debts, and paid *pro rata* with other debts in that class, in case the estate be insolvent. The decree also gives costs, and awards execution in case the debt be not paid.

This decree, and its several orders are assigned for error.

The only question of any importance is, whether the estate of a joint obligor, who is mere surety, is not discharged, by the death of such surety before suit brought. The other question about the want of a prayer, we do not regard as of any importance, for the object is to determine the liability, and ascertain its amount, that it may be filed with the Probate Court, for payment in the due course of administration.

By the principles of the Common Law, when one joint obligor dies, all right of action at law, as against his estate, or his administrators, is gone. 1 Chitty's Pl. 57. It was only in Equity that relief and satisfaction could be had out of his estate. And even here, some nice distinctions were adopted, under which relief was refused, unless the intestate participated in the benefits of the consideration, or was, from the nature of the agreement, or, from the circumstances, ought to be treated as a several obligor. If a separate liability is to be shown from the circumstances of the case, and the requirements of the law governing those sales, as a ground of relieving against the estate of a deceased surety, the liability is most clear in this case. The law regulating the sale of school land, and directing the kind of contract to be entered into, with the time and terms of credit, &c., is the public law of the land, and the security must take notice, at his peril, the liability the law imposed on a surety to a purchaser at such a sale. The statute has made these notes joint and several, for it has given the form of the obligation to be signed by the purchaser and his surety, and by it, they are to become jointly and severally liable for the purchase money, the law also declaring that the surety shall be liable in all respects as principal. Digest of School Laws, 11, § 10; Ib. 19, § 1; Ib. 31. Preference is given school debts above all others, except the expenses attending the last sickness. Ib. 20, § 4.

From the provisions and spirit of these laws, we cannot interpret the obligation of the defendant's intestate on being that of a mere joint security in Law or Equity, and to be discharged by death. Under this view of the surviving liability of Johnson, imposed by the laws under which he entered into the contract, it is unnecessary to advert to the many nice distinctions in Equity, upon which the Court will fix, or discharge that liability. The law has fixed.upon him as a several obligor and principal, a liability to pay this debt, and Equity will enforce it, notwithstanding the terms of this contract were joint, and he was merely a security.

The decree providing for the issuing an execution under it, was erroneous, and that part will be reversed. The remainder of the decree will be affirmed, each party paying his own cost in this Court.

TREAT, J. delivered the following dissenting opinion:

This cause was heard in the Court below on the bill and answer. In such case, the answer is to be considered as true. Johnson, then, was a mere surety to the note. The note was a joint, and not a joint and several contract. It is well settled, where one of several joint contractors dies, that his personal representatives are at law discharged, and the surviving joint contractors are alone sueable at law. 1 Chitty's Pl. 57; 5 Bac. Abr. 164. The administrators of Johnson are therefore fully exonerated at law. The only question is, can they be held responsible in Equity? As a general rule, the estate of the deceased joint contractor may be charged in Equity. To this general rule, the case of a surety is an exception. The doctrine of Equity is, where a surety, or the representative of a surety, is discharged at law, that it will never revive the liability, and enforce the contract. This doctrine was established at an early day, and has been inflexibly adhered to and maintained, both in England and in this country. The following authorities fully assert the truth of this proposition. *Rawston* v. *Parr*, 3 Russ. 424, 539; *Weaver* v. *Sheyork*, 6 Serg. & Rawle, 262; *Harrison* v. *Field*, 2 Wash. 136; *Chandler* v. *Hill*, 2 Hen. & Mun. 124; 1 Story's Eq. Jur. 176 to 178; 2 Williams on Executors, 1242. No

conflicting decisions were read on the argument, and I am not aware that any can be found. Upon authority, therefore, it would seem to be conclusive, that the administrators of Johnson ought not to be held responsible.

I admit that Courts of Equity have manifested a strong disposition, where the facts of the case would seem to authorize it, to consider the contract joint and several, for the purpose of charging the estate of the deceased party. For the same purpose, they have, in some cases, inferred from the nature of the contract, either that the deceased contractor was not strictly a surety, or that he participated in the consideration.

This case, however, authorizes no such inference or intendment. The facts that the note was joint, that Johnson was a mere surety, that he did not in any manner participate in the consideration, are beyond all controversy. These are the express allegations of the answer. The truth of the answer not being in issue, they are to be considered as absolutely true. These are fixed and undeniable facts. The complainant cannot controvert them. How, then, can the Court intend any thing against them? In the face of these express allegations, it will not suffice to say that, inasmuch as the law required the School Commissioner to take joint and several notes, this was intended to be such an obligation, and must be so regarded. It might, with more propriety, be inferred that Johnson refused to sign a joint and several note, and therefore a joint one was taken. In order to protect the school fund, it would be better to say, that the School Commissioner shall be held responsible for the loss, on the ground that he has been guilty of a dereliction of duty, in not insisting on a joint and several note.

In my opinion, the decree of the Circuit Court ought to be reversed, and the bill dismissed.

*Decree affirmed.*